UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In the Matter of the Petition of TOM MOTSINGER and JAMIE MOTSINGER as Owners/Operators of the R/V MEANT TO BE for Exoneration From or Limitation of Liability | Civil Action No. 3:13-cv-215-DJH-DW<br><br>IN ADMIRALTY |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

On November 29, 2012, Petitioners Tom and Jamie Motsinger, along with two other people, were on board the Motsingers' boat when an explosion occurred in the engine room, causing the vessel to catch fire. (Docket No. 1) As a result of the explosion and subsequent fire, a guest on board was injured and a nearby boat and boat slip were damaged. (*Id.*) Pursuant to the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30505, the Motsingers filed a petition in this Court for exoneration or limitation of liability from claims arising from the explosion and fire. (*Id.*) Petitioners previously filed a motion for summary judgment, which was denied. (*See* D.N. 70) They have now filed a renewed motion for summary judgment. (D.N. 71) Because a genuine dispute of material fact exists as to Petitioners' liability, the renewed motion for summary judgment will be denied.

**I.     BACKGROUND**

In May 2012, the Motsingers traveled to Northern Ohio to examine a boat that they were considering purchasing. (D.N. 53, PageID # 412) Before buying the boat, the Motsingers had it inspected by two marine surveyors. (*Id.*) Both surveyors identified cracking on hoses near the engine and recommended replacing the hoses. (*Id.*) The Motsingers bought the boat on July 13, 2012. (*Id.*) The boat was then transported to Oldham County, Kentucky, and unloaded at R&R

1

Marine.  (*Id*., PageID # 413; D.N. 49, PageID #341)  R&R Marine made repairs to the hull, changed the oil, and helped the Motsingers launch the boat.  (D.N. 49, PageID # 341)  The Motsingers never gave R&R Marine a copy of either of the earlier surveys they had commissioned.  (D.N. 53, PageID #415)  Because the Motsingers were "novices in the operation of a vessel," they had Randy Powell, an employee of R&R Marine, help them take the boat to a fuel dock, fill the gas tanks, and dock it at their boat slip in Rose Island Marina on the Ohio River.  (D.N. 49, PageID # 340-41)

That night, the Motsingers slept on their boat for the first time.  (*Id*., PageID # 342)  During the night, the Motsingers noticed the smell of gasoline.  (*Id*.)  The next day, Tom Motsinger saw Randy Powell and two friends walking down the dock, and he told them of the gas smell.  (*Id*., PageID # 342-43)  The three men were on their way to take Powell's boat out on the river, but they agreed to take a look at Motsinger's boat to see if they could identify the source of the gas smell.  (*Id*.)  The men checked the bilge and confirmed that no gas was floating in it.  (*Id*.)  They informed Motsinger that they could not identify the cause of the gas smell and told him to call R&R Marine if he continued to notice the problem.  (*Id.*, PageID # 344)  Motsinger never called R&R Marine about the gas smell.  (*Id.*)  Approximately one month later, Tom Motsinger contacted R&R Marine because one of the boat's engines stalled while piloting the boat on the Ohio River.  (D.N. 53, PageID # 414)  R&R Marine "checked an alternator and installed a new marine battery charger."  (*Id*.)

The Motsingers claim that they never used the boat without an employee from R&R Marine being present to assist them with operating the vessel.  (D.N. 49, PageID # 344-45)  However, the respondents claim that Tom Motsinger was in charge of the operation and

2

maintenance of the boat, and that the Motsingers "made several voyages up and down the River" without an employee from R&R Marine being present. (D.N. 53, PageID # 415)

On November 29, 2012, the Motsingers planned to begin winterizing the boat with the help of Randy Powell. (D.N. 49, PageID # 345) Powell arrived, along with a friend, Melissa Hall, who the Motsingers agreed could come aboard the boat. (D.N. 53, PageID # 416) The Motsingers claim that Powell was there to help them operate their boat, while Powell maintains that he was simply showing the Motsingers a place where they could empty their sewage hold. (*Id.*; D.N. 49, PageID # 345) However, because Powell did not have time to complete winterization of the boat, it was decided that they would simply refuel the vessel. (D.N. 49, PageID # 345) Tom Motsinger, with Randy Powell standing next to him, steered the boat from its dock to a nearby fueling station on the Ohio River. (D.N. 53, PageID # 416) Motsinger filled the starboard gas tank and did not notice anything unusual. (*Id.*, PageID # 416-17; D.N. 49, PageID # 346) The boat then returned to the marina. (D.N. 53, PageID # 417) Hall alleges that as Motsinger was trying to back his boat into its assigned boat slip, one of the engines stalled and "a loud alarm began ringing from the dash panel of the boat." (*Id.*) According to Hall, Motsinger then immediately tried to restart the stalled engine, and "the vessel exploded simultaneous with this act." (*Id.*) However, the Motsingers claim that "on the trip back from the fuel dock to the boat slip while idling along, the boat exploded with no warning." (D.N. 49, PageID # 346) The explosion and subsequent fire seriously injured Hall's foot and leg; a nearby dock and boat owned by Respondents Eric and Bethany Grubb were also damaged. (D.N. 53, PageID # 417-18)

Following the incident, the Motsingers and Hall each hired experts to "personally inspect[] the damaged vessel." (*Id*., PageID # 418-19) The experts' reports indicate that they agree on the following points:

> First, both are in agreement that the incident was consistent with a gasoline vapor explosion. Second, both identified the same staining on the top and sides of the starboard fuel tank that was made by gasoline standing on the tank over a long period of time. Third, both seem to agree that a leaking hose located on top of that tank is what caused the staining. Fourth, both investigators identified a distinct vee burn pattern on the inside wall of the vessel near the starboard tank. Due to the condition of the vessel after the fire, neither investigator was able to identify the specific source of the spark that ignited the vapors.

(*Id.*, PageID # 419 (internal citations omitted))

However, the experts do not agree on the accessibility of the leaking hose. (*Id.*) Hall's expert, Walter Godfrey, asserts that the leak was accessible "from either the salon hatch or the main engine hatch," and could have been inspected. (*Id.*, PageID # 419-20) Meanwhile, Greogry Davis, the Motsingers' expert, contends that the hose was inaccessible, making inspection and repair impossible. (*Id.*) He claims that a couch or entertainment cabinet was positioned above the salon hatch, and that the workspace accessible from inside the main engine hatch was too small. (*Id.*)

On February 19, 2013, the Motsingers filed a petition for exoneration from or limitation of liability pursuant to 46 U.S.C. § 30503 *et seq.*, claiming that their liability should be limited because they were not at fault for the accident and had no privity or knowledge of any mechanical issues. (D.N. 1) The Motsingers then filed a motion for summary judgment. (D.N. 49) However, that motion was denied as moot after Respondent/Counterclaimant Rose Island Yacht Club was dismissed from the case because the Motsingers' motion for summary judgment did "not specifically address the only remaining Respondents/Counterclaimants." (D.N. 70) The Motsingers were granted leave to refile a motion for summary judgment, and they did so on

4

September 16, 2015. (D.N. 71) Respondents Eric and Bethany Grubb contend that the renewed motion for summary judgment should be denied because the Motsingers were negligent in their operation of the boat and the vessel was not seaworthy, and thus, they are not entitled to a limitation of their liability. (D.N. 72)

**II. DISCUSSION**

**A.**

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In considering a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

B.

"The Limitation of Liability Act ("LOLA"), originally enacted in 1851, permits a vessel owner to limit its liability to the value of the vessel and its then pending freight, provided that the loss or damage is incurred without the 'privity or knowledge' of the owner." *In re Muer*, 146 F.3d 410, 414 (6th Cir. 1998). The Sixth Circuit has adopted two elements for determining whether an owner's liability should be limited under LOLA: "(1) negligence or unseaworthiness, and (2) the owner's privity or knowledge of the negligence." *Id*. at 415. "The burden of proving negligence lies on the person claiming to be injured." *In re Cleveland Tankers, Inc.,* 67 F.3d 1200, 1203 (6th Cir. 1995). However, "once negligence is established, the vessel's owner must prove lack of knowledge or privity to the negligence." *Id*.

The respondents argue that the Motsingers were negligent in their inspection and repair of the boat and that they were "incompetent to act as master, captain, officer, seaman or crew which is what they were doing on November 29, 2012 at the time of the explosion." (D.N. 53; D.N. 72, PageID # 782) To support these claims, the respondents allege that the Motsingers operated the boat several times on their own, despite claiming to be "novices." (D.N. 53, PageID # 415) On the day of the incident, they assert Tom Motsinger was negligent in trying to restart the stalled engine, despite hearing a loud alarm coming from the dash panel. (D.N. 53, PageID # 417) Finally, they argue that the Motsingers should have known of the leaking hose because an inspection revealed the issue before they purchased the boat (D.N. 53, PageID # 412) and, according to Hall's expert, Walter Godfrey, they could have and should have inspected the engine room while they owned the boat. (*See* D.N. 53, PageID # 418-19)

The Motsingers, on the other hand, claim that they were not negligent because they hired a certified marine surveyor, had a mechanical survey performed, and employed R&R Marine to

6

"put the boat in the water[,] . . . perform initial maintenance on it[,] and . . . assist in fueling and docking the boat." (D.N. 49, PageID # 352)  They also point out that they asked R&R Marine personnel to inspect the boat after they smelled gas during the first night and had an R&R Marine employee with them each time they took out the boat. (*Id*., PageID # 352-53)  The Motsingers further claim that the boat exploded without warning while they were "idling along." (D.N. 49, PageID # 346)  Finally, they assert that they were not negligent in failing to inspect the fuel hoses because the "owner's manual contained no instructions for gaining access for inspection," and "the boat was not built in compliance with federal requirements, precluding the ability to inspect the hoses of their connections." (*Id*., PageID # 353)  According to the Motsingers' expert, Gregory Davis, it was "impossible" for them to access the leaking hose because the workspace around the hose was too small. (D.N. 53, PageID # 419)

   Given the differing accounts of what happened and the conflicting opinions of the post-accident investigators, there is a "genuine conflict in the evidence, with affirmative support on both sides." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).  Each side presents their own account of the incident, which differ in key ways: for instance, whether an alarm was ringing just before the explosion occurred. (D.N. 53, PageID # 417)  This disputed account is potentially critical to whether the Motsingers acted negligently.  There is also disagreement over how much skill and knowledge Tom Motsinger had with respect to operating and maintaining the boat. (D.N. 49, PageID # 352; D.N. 53, PageID # 415)  Finally, there is a debate over whether the Motsingers could have accessed the engine room to inspect the hose and whether they were negligent in not doing so. (*Id.*, PageID # 418-20)  One expert claims that the leaking hose was accessible and could have been inspected, while the other contends that the hose was inaccessible and thus could not have been discovered. (*Id.*)  Each of these disagreements goes to

7

the question of whether the Motsingers were negligent in their operation of the boat or were competent to operate it. *See In re Muer*, 146 F.3d at 414. Because there is a genuine dispute of material fact and the court may not weigh the evidence on summary judgment, the motion for summary judgment will be denied. *See Anderson*, 477 U.S. at 249.

### III. CONCLUSION

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Petitioners' Renewed Motion for Summary Judgment (D.N. 71) is **DENIED.**

The Court will schedule a status conference by subsequent order.

September 30, 2016

**David J. Hale, Judge**
**United States District Court**